IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANNY R. YATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-01849 |
| ) | |
| METROPOLITAN GOVERNMENT OF ) | Judge Sharp |
| NASHVILLE AND DAVIDSON ) | Mag. Judge Knowles |
| COUNTY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Presently pending before the Court is Defendant Metropolitan Government of Nashville and Davidson County's Motion for Summary Judgment, (Docket No. 23), to which Plaintiff Danny R. Yates has Responded in Opposition, (Docket No. 25), and Defendant has replied, (Docket No. 28). For the reasons set forth below, the Motion will be granted.

**I.     Factual & Procedural Background[1]**

Plaintiff Danny R. Yates is a white male employee of Defendant Metropolitan Government of Nashville and Davidson County ("Defendant" or "Metro"). Specifically, Plaintiff works for the Metropolitan Fire Department. He has served as an employee of Metro for over forty years, holding the positions of Firefighter, Fire Engineer, Fire Instructor, Fire Captain, Fire District Chief, Fire Assistant Chief, Deputy Chief of Fire Suppression, and, now, Administrative Deputy. He was serving in the penultimate position, Deputy Chief of Fire Suppression, when the Fire Department elevated Billy Lynch to Acting Director-Chief of the Fire Department. Mr. Lynch began as Acting Director-Chief in April 2012 and was to serve in

---

[1] Unless stated otherwise, the following facts are drawn from the parties' statements of material facts and responses thereto. (Docket Nos. 21, 26, 27, & 29).

1

that role while the Fire Department conducted a search for and hired an appropriate long-term Deputy Chief. Ultimately, however, the Fire Department opted to hire an Interim Director-Chief. At the time the parties briefed this Motion, the Fire Department had not yet selected a new long-term Director-Chief.

In late 2012, under the stewardship of Mr. Lynch, Metro offered an early retirement incentive program to certain employees, including Plaintiff. Mr. Lynch encouraged eligible employees to participate, telling Plaintiff and others that the retirement incentive program might be "a good time for some of you to go" and that those eligible employees who declined the program "might find [themselves] working for someone who now works for you." (Docket Nos. 27 & 29 at ¶ 5). Metro does not dispute that the incentive program, also referred to as a "buyout," was an attempt to get some of the older members of the Fire Department to leave. The day before the deadline to participate in the incentive program, Mr. Lynch spoke to Plaintiff and made the following comments:

(a) "How old are you and how long do you plan on working?"
(b) "You will not be the next Director-Chief of the Nashville Fire Department; someone in their mid-40s should be the next Director Chief."
(c) "We need some young blood around here."
(d) "This place is old. Don't you think a person who is between 60 and 62 years old should retire from the department?"
(e) "If you are still here after the buyout, I'm going to move you around for your own good."

(Docket Nos. 27 & 29 at ¶ 7). Notwithstanding these comments, Plaintiff declined to participate in the incentive program, choosing instead to continue working. Shortly after the deadline to participate passed, Mr. Lynch informed Plaintiff that he was being reassigned and would now serve as Administrative Deputy instead of Deputy Chief of Fire Suppression. Mr. Lynch has stated that the reassignment was due at least in part to concerns about Plaintiff's job performance. Defendant also points to a broader restructuring that occurred in response to

2

something the parties refer to as the "Maximus Audit," which also took place in the 2012-2013 timeframe:

> The [Maximus] restructuring required consolidating and merging multiple bureaus, changing the reporting structure of divisions, and realigning staff to effectively implement the recommendations. Ultimately, this restructuring consolidated five bureaus into three divisions. This change brought the Fire Suppression and EMS bureaus under one new Operations division.

(Docket No. 20 at 12-13 n.9) (internal citation omitted).

Plaintiff asserts that the Administrative Deputy position is less prestigious and that in his new role, he has fewer responsibilities and oversees fewer subordinates. The new role also involves certain areas of work with which Plaintiff has little prior experience. Plaintiff's salary and Deputy Chief status remain the same even after the reassignment. Mr. Lynch has indicated that when Plaintiff eventually retires, the Administrative Deputy position will be reabsorbed by and/or merged with other positions. Plaintiff believes that this job reassignment constituted a discriminatory demotion or transfer.

Plaintiff's reassignment was accompanied by a change in the physical location of his office. Plaintiff had previously worked on the second floor of the administration building, but Mr. Lynch moved him to a vacant first-floor office. The Director-Chief office and the offices of all other Deputy Chiefs are located on the second floor. Plaintiff began to miss out on many impromptu upper management meetings, meetings which tended to arise by virtue of proximity. Plaintiff was also left out of preplanned department meetings, such as a Station Visits Prep Meeting and a Captains Interviews session. Plaintiff was the only individual at his level not invited to the latter meeting.

In September 2013, Defendant selected Rick White to serve as the Interim Director-Chief. Mr. White, who was 58 at the time, had apparently informed Mr. Lynch that he planned to retire in a few years. The Fire Department opted to fill the Director-Chief position on an

3

interim basis with Mr. White, with the intention to fill it on a permanent basis after Mr. White's eventual retirement. Although Plaintiff had more seniority than any other Deputy in the Fire Department, he was neither interviewed nor considered for the Interim Director-Chief position. Other individuals were able to advance within the Fire Department and some employees who used to be Plaintiff's subordinates became his superiors. Plaintiff concedes that these individuals "are nearly the same age as he is." (Docket Nos. 21 & 26 at ¶ 13).

Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC") in April 2013. The charge details the events and comments surrounding the early retirement program, Plaintiff's transfer to Administrative Deputy, and the exclusion he faced after the transfer.[2] After filing his charge, Plaintiff continued to work for Defendant as Administrative Deputy. He claims that, after his THRC charge, the exclusion by Mr. Lynch worsened. Other employees who were deposed in this matter seem to confirm that Plaintiff was purposefully left out from meetings and that this may have increased after his charge. Plaintiff claims that this worsening treatment was retaliation for his refusal to retire and his charge of discrimination.

The THRC issued its final determination of "no cause" on May 22, 2014 and alerted Plaintiff to his right to pursue his claims via civil suit. The Equal Employment Opportunity Commission ("EEOC") adopted the THRC's findings and issued its own notice on May 30, 2014. Plaintiff filed suit in the Chancery Court of Davidson County on August 28, 2014. He asserts age discrimination claims under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-401 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29

---

[2] Plaintiff's charge specifically asserted that he was "harassed/intimidated" and "transferred" in violation of anti-discrimination law. The Court refers to the former as a hostile work environment claim and the latter as a discriminatory transfer claim.

4

U.S.C. § 621 *et seq*. Defendant removed the case to this Court and now seeks summary judgment on all claims.

## II. Timeliness & Administrative Exhaustion

As a threshold matter, Defendant argues that at least some of Plaintiff's claims are time-barred. The Court agrees. The ADEA incorporates the enforcement mechanisms of Title VII of the Civil Rights Act, which require a party to exhaust his or her administrative remedies prior to filing suit. 42 U.S.C. § 2000e-5. A plaintiff has 300 days after a discriminatory decision to file a charge with the EEOC or a state agency and 90 days after the EEOC provides notice of its findings in which to initiate a civil action. Id. at § 2000e-5(f)(1).

Unlike the ADEA, the THRA does not require administrative exhaustion. Rather, the statute provides an aggrieved employee with two routes: (1) file a complaint with the THRC within 180 days of the discriminatory conduct and resolve the dispute through administrative channels, Tenn. Code Ann. § 4-21-311; or (2) bypass the administrative system and challenge the employer's conduct in Chancery Court within one year of the discriminatory conduct, Tenn. Code Ann. § 4-21-311. If an employee opts to file a complaint with the THRC and wishes to challenge the Commission's findings, he or she must seek judicial review within 30 days of the THRC's determination. The THRA has been construed to require an election between the two routes, not an opportunity for an employee to seek simultaneous forms of relief. Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1485–86 (6th Cir. 1989) ("[T]he Tennessee courts have read the Act to force an election between the administrative remedy and the judicial remedy, at least where an aggrieved individual has initiated the administrative process and pursued it to an administrative conclusion.").

Here, Plaintiff elected to challenge Metro's conduct via an administrative complaint to the THRC. Plaintiff's THRC charge, filed in April 2013, encompassed only the alleged

5

harassment and discriminatory transfer. At no point did Plaintiff amend his THRC complaint to add his failure to promote or retaliation claims. He did, however, pursue his THRC complaint to a final resolution, in which the THRC issued a determination of "no cause" on May 22, 2014. Plaintiff was required to seek judicial review of this determination by June 22, 2014, but did not initiate this action until more than two months after that deadline. Plaintiff may not now challenge the allegedly discriminatory conduct in a civil action. As the Sixth Circuit explained in <u>Puckett</u>, Plaintiff elected the administrative route and cannot backtrack on that decision by asserting claims in a civil action merely because he did not achieve success before the THRC. Accordingly, Plaintiff is now foreclosed from asserted claims under the THRA.

Although Plaintiff initiated this litigation outside the THRA's 30-day deadline, he filed his Complaint in Chancery Court within the 90-day window provided for by federal law. Those of Plaintiff's claims that were encompassed by his administrative complaint, and only those claims, were properly exhausted and timely filed for the purposes of federal law. Plaintiff therefore has viable ADEA claims for hostile work environment and discriminatory transfer. The Court will consider whether Defendant is entitled to summary judgment on those claims.

### III. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage, the Court considers the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. <u>See</u> <u>Chapman v. UAW Local 1005</u>, 670 F.3d 677, 680 (6th Cir. 2012) (en banc). However, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). Therefore, summary judgment is proper where the non-moving party "fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Van Gorder v. Grand Trunk W. R.R., 509 F.3d 265, 268 (6th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## IV. Legal Analysis

The ADEA bars discrimination because of an employee's age. The protection against age discrimination is limited to people who are at least 40 years old. 29 U.S.C. § 631(a). In order to prevail, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 177-78 (2009). Plaintiff contends that his reassignment to Administrative Deputy was age-based discrimination and that he experienced a hostile work environment. The Court will address each claim in turn.

### A. Discriminatory Transfer

A plaintiff may establish a claim under the ADEA through the use of direct or indirect evidence. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Such evidence "proves the existence of a fact without requiring any inferences." Minadeo v. ICI Paints, 398 F.3d 751, 763 (6th Cir. 2005) (quoting Rowan v. Lockheed Martin Energy Systems, 360 F.3d 544, 548 (6th Cir. 2004)). "If a plaintiff succeeds in presenting direct evidence of a discriminatory motive, 'the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.'" Id. (quoting DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004)).

Indirect or circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir.

2003) (en banc). If a plaintiff relies on indirect evidence, the familiar McDonnell-Douglas burden-shifting framework applies. Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012). Under the McDonnell-Douglas framework, a plaintiff must first establish a *prima facie* case of discrimination. Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 521 (6th Cir. 2008). If he can do so, the burden shifts back to the defendant to articulate a legitimate reason for the employment decision, which the plaintiff must then rebut as pretext. Id. Regardless of the method utilized, "[t]he key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir. 2007)).

Plaintiff contends that his reassignment to the Administrative Deputy position was a discriminatory demotion. The evidence he presents for this claim is indirect because it centers on Plaintiff's decision not to retire, rather than explicit remarks about his age. Mr. Lynch made comments such as, "How old are you and how long do you plan on working?" and "If you are still here after the buyout, I'm going to move you around for your own good." The Sixth Circuit has instructed that references to retirement plans, pensions, or years of service do not constitute direct evidence of age discrimination because such references do not "necessarily invoke age." Hale v. ABF Freight Sys., Inc., 503 F. App'x 323, 331 (6th Cir. 2012) (citing Scott v. Potter, 182 F. App'x 521 (6th Cir. 2006) (categorizing as indirect evidence an employer's remark, "Why don't you retire and make everybody happy?")); see also Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (noting that relying on factors that correlate with age when making employment decisions does not necessarily constitute age discrimination). Comments about retirement still require an inferential step to determine whether retirement is being used impermissibly as a proxy for age. Hale, 503 F. App'x at 331. Mr. Lynch's remarks that Plaintiff was being

8

reassigned because he chose not to partake in the early retirement incentive program are therefore circumstantial evidence of age discrimination.

To establish a prima facie case of age discrimination using indirect evidence, Plaintiff must show that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker, or there are circumstances that support an inference of discrimination. Moffat v. Wal-Mart Stores, Inc., 624 F. App'x 341, 346 (6th Cir. 2015). Plaintiff clearly establishes the first prong because he was over 60 years old at the time of his demotion. The Court also agrees with Plaintiff that being reassigned to the position of Administrative Deputy was, in fact, an adverse employment action because it was a "materially adverse change in the terms of [his] employment." White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 791 (6th Cir. 2004) (en banc) (quoting Kocsis v. Multi–Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996)). In Kocsis, a nursing supervisor was reassigned as a unit nurse. There was no evidence that the new position held less prestige, earned a lower salary, demanded worse hours, or entitled her to any difference in employment related benefits of any kind. Id. at 886-87. The Sixth Circuit therefore concluded that the reassignment was not an adverse action. Id. In White, a female railroad employee sued her employer for sex discrimination. After she had complained about sexual harassment committed by her immediate supervisor, she was removed from her forklift position and reassigned to a track laborer position. 364 F.3d at 792. Her pay and benefits were the same, but the job was dirtier, more labor intensive, more difficult, required fewer qualifications, and was considered a worse job by the other employees. Id. at 793. These changes were sufficient for the Sixth Circuit to conclude that even though there was no loss in salary or benefits, the factors listed above were unique to the plaintiff's situation and rendered the transfer a demotion. Id. at 803.

Plaintiff's salary is more akin to the situation in White. His salary and benefits remained the same when he was reassigned to the position of Administrative Deputy, but there were other significant changes, such as changes to Plaintiff's supervisory powers. Defendant argues that Plaintiff's new role involves "overseeing the daily operations of a major division, responsible for over 20 million capital dollars," (Docket No. 20 at 12-13 n.9), yet also acknowledges that this position will be absorbed by others whenever Plaintiff retires, (Docket Nos. 27 & 29 at ¶ 12). Moreover, both parties agree that Plaintiff now oversees fewer people, performs substantively different work, and "is now excluded from the many impromptu meetings that occur amongst upper management on the second floor." (Docket Nos. 27 & 29 at ¶ 9-15).

In light of these changes to his job, Plaintiff has sufficiently demonstrated that he suffered an adverse employment action. Neither party has disputed that Plaintiff was qualified for his previous job, and while the record does not clarify who, if anyone, took over the Chief of Fire Suppression role, the record does give rise to an inference of discrimination. Accordingly, Plaintiff has adequately established a prima facie case of discriminatory demotion.

Defendant argues that regardless of whether an inference of discrimination may be drawn from Plaintiff's transfer, Plaintiff was reassigned for a legitimate reason: the Maximus Audit. Indeed, this aligns with the findings of the THRC, which concluded that "[t]he evidence shows that [Plaintiff was] not demoted but laterally transferred during a reorganization which affected several employees within the Nashville Fire Department, none of whom were demoted or involuntarily received a decrease in pay. The reorganization appears to have been based on a consulting firm's recommendations after a management audit, and that after consolidation of the bureaus, [Plaintiff] remained in charge of one of the three new divisions." (Docket No. 18-1) (THRC's final determination). Defendant confirms this finding in its Memorandum when explaining the Maximus audit and resulting reorganization. (Docket No. 20 at 12-13 n.9).

Defendant also notes some criticisms with Plaintiff's performance, which rendered him more vulnerable to such a job reassignment, including inappropriate incidents at the firehouses while Plaintiff served as Chief of Fire Suppression. (Docket No. 20 at 7).

Plaintiff fails to adequately rebut this reasoning as pretext, as he is required to do under the McDonnell-Douglas framework. He asserts that no real issues with his performance exist. Yet the deposition testimony from Chief Rick White indicates that there were, in fact, some performance concerns. (Docket No. 15 at 44:18 to 46:5). Indeed, while Plaintiff served as Chief of Fire Suppression, three firefighters were fired after it was discovered that one of the stations had hosted nude dancers and engaged in inappropriate activity with them. Neither does Plaintiff present any evidence in response to Defendant's arguments regarding the Maximus Audit. He fails to explain why, in the midst of a massive reorganization, his reassignment stands out as discriminatory. It is particularly telling that Plaintiff does not dispute that the other employees who advanced either during or after the restructuring were close to him in age. (Docket Nos. 21 & 26 at ¶ 10).

In sum, Plaintiff has established a prima facie case that his transfer was age-based discrimination, but has failed to show that the reasons Defendant offered for his transfer are pretext. Because Plaintiff has not carried his burden, Defendant is entitled to summary judgment on Plaintiff's claim arising from his transfer to the Administrative Deputy position.

B. Hostile Work Environment Under the ADEA

Plaintiff also argues that he was subject to a hostile work environment based on his age. The standard for a hostile work environment claim under the ADEA is well-established. A plaintiff must establish four elements: (1) the employee is 40 years or older; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with the employee's work performance and creating an

objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. Crawford v. Medina Gen. Hosp., 96 F.3d 830, 834-35 (6th Cir. 1996). Whether an environment is hostile or abusive is determined by looking at all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). As the parties note, "[b]oth an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000).

As evidence of the hostile work environment, Plaintiff points to the comments about age and retirement by Mr. Lynch. Metro responds by noting that, as explained above, retirement-related comments do not necessarily have to do with age. Defendant also contends that discussion of retirement was appropriate due to the early retirement program and the restructuring. The chronological list of comments that Plaintiff compiled and included in his THRC charge, (Docket No. at 4-6), confirms that most of Mr. Lynch's comments related in some way to either the retirement incentive program or the restructuring. To be sure, some of his comments did bear directly on age. For example, he said "[s]omeone in their mid-40s should be the next Director-Chief" and "[w]e need some young blood around here." However, Plaintiff does not identify any allegedly discriminatory comments after January of 2013, the deadline for the retirement program. The record therefore supports Defendant's contention that Mr. Lynch's comments can be attributed to the buyout, not a generally hostile attitude toward older workers.

Moreover, even if some of the comments were age-related, those were not severe and pervasive enough to constitute a hostile work environment. Indeed, while Plaintiff may have

subjectively felt abused based on age, the continued success of other employees who were in their fifties and sixties prevents a conclusion that the environment was objectively hostile. Accordingly, Defendant is also entitled to summary judgment on Plaintiff's hostile work environment claim.

V.     **Conclusion**

Because Plaintiff elected to pursue his claims with the THRC and filed to timely seek review of their determination, he may only assert his properly exhausted ADEA claims arising from his transfer and the allegedly hostile work environment. But because Plaintiff cannot rebut Defendant's legitimate reason for the transfer and fails to establish severe and pervasive age-based discrimination, Defendant is entitled to summary judgment.

A separate order shall enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE